United States District Court
for the
Southern District of Florida

| Adriana Ifergane, Plaintiff, | ) |
| --- | --- |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-21123-Civ-Scola |
| Pascal Fratellini and Scott Holland | ) |
| Defendants. | ) |

## Order Granting in Part and Denying in Part the Defendants' Motions for Summary Judgment

Plaintiff Adriana Ifergane accuses Defendants Pascal Fratellini and Scott Holland of interfering with her expectancy that she would receive benefits under a life-insurance policy maintained by her former husband, Charles Schreiner. (Am. Compl., ECF No. 9.) In particular, she says the Defendants forged her former husband's signature on a beneficiary-change form or, alternatively, wrongfully convinced him to change the policy beneficiary to Fratellini. In her complaint she seeks relief through two counts: one for declaratory relief; and the other for tortious interference with an expectancy. Fratellini and Holland have, separately, moved for summary judgment (Defs.' Mots. for Summ. J., ECF Nos. 32, 33.) They submit Ifergane has failed to come forward with evidence sufficient to establish a genuine issue of material fact with respect to her claims. Ifergane, of course, opposes both motions, arguing she has indeed presented genuine issues of material fact and that she is therefore entitled to a trial on the merits of her claims. (Pl.'s Resps., ECF No. 35, 36.) Having considered the parties' briefing, the record, and the relevant legal authorities, the Court is persuaded, for the following reasons, that Fratellini's motion is to be **granted** (**ECF No. 32**) and Holland's motion is to be **granted in part and denied in part** (**ECF No. 33**).

1. **Background**[1]

Ifergane and Schreiner married in 1999. (Pl.'s Resp. to Def. Holland's Stmt. of Facts ¶ 1, ECF No. 36-1, 2.) Fidelity & Guaranty Life Insurance Company issued a $250,000 life-insurance policy to Schreiner, insuring his own life, in November 2002. (*Id.* at ¶ 2.) Although there appears to be some disagreement as to when, at some point, whether at the policy's initial issuance or sometime later, Schreiner designated Ifergane as the sole beneficiary under the policy. (*Id.* at ¶ 4.) Thereafter, Ifergane filed for divorce in 2007 and then remarried some

---

[1] Except where indicated, the Court considers the following facts undisputed.

four years later in California. (*Id.* at ¶¶ 5–6.) Despite their divorce and Ifergane's remarriage, she and Schreiner remained close friends. (*Id.* at ¶ 64.) Indeed, Schreiner continued to designate Ifergane as the sole beneficiary under the policy well beyond the end of their marriage, going so far as to update his policy, in December 2017, to reflect Ifergane's new married name and marital address, in California. (*Id.* at ¶¶ 5–6.)

In August 2017, Schreiner was diagnosed with stage-four lung cancer. (*Id.* at ¶ 7.) Two months earlier, Schreiner had asked Holland, Schreiner's longtime friend, to move into Schreiner's apartment, in Miami Beach. (*Id.* at ¶ 8.) Thereafter, Holland helped care for Schreiner following his diagnosis. (*Id.* at ¶ 8.) During this time, on February 14, 2018, Holland says he witnessed Schreiner sign a form, changing the beneficiary of his insurance policy from Ifergane to Fratellini, a long-time friend of both Holland and Schreiner's. (Holland Dep. 29:25–30:5; 48:6–8; ECF No. 36-2). Ifergane acknowledges telling Schreiner, prior to this, in November 2017, that her estranged father had died and she expected to inherit a substantial sum as a result. (Pl.'s Resp. to Def. Holland's Stmt. of Facts ¶ 12.)

Schreiner died on March 10, 2018. The day before his death, Fidelity received the change-of-beneficiary-request form and a change-of-name or mailing-address form, both of which appeared to be signed by Schreiner and dated February 14, 2018. (Fidelity Docs., ECF No. 30-1, 9–16.) On the change-of-beneficiary form, Holland is listed as, and signed as, a disinterested third-party witness to Schreiner's signature. (*Id.* at 10.) Further, Holland testified that he watched Schreiner sign the forms. (Holland Dep. at 30:2–5.) However, Ifergane has presented the opinion of a purported handwriting expect who opines that it is "highly probable" that the February 14 signature is a forgery. (Hoeltzel Aff., ECF No. 30-7, 4–5.) Additionally, Ifergane says that on March 6, 2018, just four days before his death, as well as on the day before he died, Schreiner reminded her about the insurance policy, telling her not to forget to call the insurance company. (*E.g.*, Ifergane Dep. 4:13–18; 10:22–23 ("Mr. Schreiner told me 24 hours before passing away "don't forget to call the insurance.").)[2]

---

[2] Ifergane also sets forth this allegation in her "declaration." However, her declaration is neither signed nor dated. Under 28 U.S.C. § 1746, an unsworn declaration must be "subscribed by [the person making the declaration], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746. Because Ifergane's declaration is neither signed nor dated, the Court will not consider it in evaluating the Defendants' motions for summary judgment. *See Orr v. Orbis Corp. (Wisconsin)*, 1:07-CV-2653-TWT-SSC, 2010 WL 3368124, at *3 (N.D. Ga. July 30, 2010), *report and recommendation*

In any event, upon being notified of Schreiner's death, Fidelity reviewed its file and paid the policy death benefits to Fratellini, or his attorney, in May 2018. (Pl.'s Resp. to Def. Holland's Stmt. of Facts ¶ 22.) After learning that she had been removed as the beneficiary of the policy and replaced by Fratellini, Ifergane concluded that either the change of beneficiary form had been forged (Ifergane Dep. 7:25–8:3, 13:1–13; ECF No. 36-2, 90, 91) or that Holland and Fratellini had, in some way, tricked or unduly influenced Schreiner into making the change (*id.* at 15:15–18).

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

---

*adopted*, 107-CV-2653-TWT, 2010 WL 3368119 (N.D. Ga. Aug. 23, 2010) (declining to consider unsigned and undated declaration on summary judgment) (collecting cases).

### 3. Analysis
### A. Tortious Interference with an expectancy.

In order to establish her claim for interference with an expectancy, Ifergane must set forth evidence supporting "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages." *Mulvey v. Stephens*, 250 So. 3d 106, 109 (Fla. 4th Dist. App. 2018). The parties' dispute, here, centers on the second element: Ifergane alleges Holland and Fratellini both tortiously interfered with her expectancy of the life-insurance proceeds by either (1) forging Schreiner's signature on the beneficiary-change forms; or (2) unduly influencing or tricking him into making the change. The Defendants both submit Ifergane has failed to come forward with evidence supporting her claims. Instead, they maintain (1) the unrebutted evidence shows Holland, as a disinterested party, witnessed Schreiner sign the change form and (2) Ifergane herself has acknowledged not having any actual evidence to support her undue influence claim against either Defendant. Ifergane counters on many fronts. She argues that Holland was not a disinterested witness to Schreiner's signature and therefore his testimony should be discounted. She also says the signature on the beneficiary-change form is not Schreiner's based on (1) her own evaluation and (2) her expert witness's conclusion that the signature is likely a forgery. She also contends the Defendants' testimony is undercut based on discrepancies in their recollections of whether and when Schreiner communicated the beneficiary change to Fratellini. She further insists there are issues of material fact because what Holland says Schreiner told him about changing the beneficiary is inconsistent with other evidence and what she says Schreiner told her about the policy. After review, the Court readily agrees with Fratellini that there are no genuine issues of material fact ripe for determination at trial regarding Ifergane's claims against him. The Court also agrees with Holland that there are no genuine issues of material fact regarding Ifergane's claims of undue influence or trickery against him. Conversely, after a careful assessment of the record, the Court finds there are indeed genuine issues of material fact regarding whether Holland forged Schreiner's signature.

**(1) Ifergane has not set forth any genuine issues of material fact with respect to her tortious interference claims against Fratellini.**

To begin with, Ifergane has not set forth any factual allegations, never mind any evidence, that Fratellini, as opposed to Holland, forged Schreiner's signature. Indeed, all of her allegations center on Holland's forging the signature. Similarly, Ifergane has not set forth any evidence that Fratellini subjected Schreiner to undue influence in order to get him to change the beneficiary

designation. Instead, she relies on inconsequential facts, conclusory allegations, and various suspicions that lack any actual evidentiary grounding. For example, she says that "[t]he inconsistencies between what Mr. Fratellini states about his knowledge of the beneficiary [of] the policy, and Holland's testimony about the February 14, 2018 phone call," allegedly informing Fratellini that he was the new beneficiary, "are significant signs of fraud." (Pl.'s Resp. to Fratellini's Mot. at 16.) She also draws attention to how differently Schreiner's December 4, 2017, and February 14, 2018, forms were handled. In particular, Ifergane points out, Schreiner signed and faxed the uncontested December 4 form on the same day, retaining the original in his home safe. In contrast, she says, the February 14 beneficiary-change form was not faxed to the insurance company until March 9, 2018. This discrepancy, Ifergane theorizes, is "an inconsistency and sign of fraud." (*Id.*) Ifergane also points to both Defendants' inabilities to explain how the form was faxed to the insurance company as a "lack of a chain of custody" and therefore another "significant sign of fraud." (*Id.* at 17.) Indeed, much of Ifergane's opposition to Fratellini's motion for summary judgment focuses on inconsistencies in Holland's testimony. None of those purported inconsistencies, however, has anything to do with whether or not Ifergane has come forward with evidence that even remotely supports her claim that Fratellini unduly influenced or otherwise tricked Schreiner into changing the beneficiary of his life-insurance policy from Ifergane to himself. In fact, Ifergane herself directly acknowledges she has "no evidence that Mr. Fratellini engaged in any undue influence" other than her "guts." (Ifergane Dep. at 110:11–20; 112:13–16.) Ultimately, Fratellini's status as a beneficiary of the questioned policy, standing alone, is simply not enough to support Ifergane's claim of tortious interference against him.

### (2) The only genuine issue of material fact regarding Ifergane's claims against Holland relate to her forgery allegations.

Ordinarily, in analogous cases involving wills alleged to be forgeries, Florida courts are typically "reluctant to invalidate a properly-witnessed will as a forgery, even when [presented with] a handwriting expert [who] concludes that the will is forged." *Ellis v. Warner*, 15-10134-CIV, 2018 WL 4846762, at *6 (S.D. Fla. Jan. 19, 2018) (Goodman, J.) (citing *In re Krugle's Estate*, 134 So. 2d 860, 863 (Fla. 2d DCA 1961)). This is "because, no matter how qualified the expert is, the expert's report is merely secondary evidence to eyewitness testimony." *Ellis*, 2018 WL 4846762, at *6. Holland urges the application of this concept to this case, where, as he describes it, he "has provided undisputed and uncontradicted testimony that he witnessed Schreiner execute the . . . form." (Holland's Mot. at 9.) And indeed, the Court would be inclined to agree that a handwriting expert's testimony alone should not be sufficient to overcome the presumption of

legitimacy where a disinterested eyewitness attests, unrebutted, to a signature's validity.

The wrinkle here, though, is that Holland's characterization of his testimony as wholly "undisputed and uncontradicted" is incorrect. Notably, Holland's position is undercut by Ifergane's testimony that Schreiner pointedly told her, on March 6, 2018, and perhaps on March 9 as well, not to forget to call the insurance company after his death. If this testimony alone were to be believed, the Court concludes a reasonable factfinder could infer that Schreiner still believed Ifergane was the policy beneficiary weeks after Holland says Schreiner made the change to Fratellini. So long as a factfinder believes Schreiner genuinely and unmistakenly believed Ifergane was the beneficiary, the legitimacy of the signature, then, would be called into question.

Additional facts, again read in the light most favorable to Ifergane, lend support to the resultant inference that Holland himself forged Schreiner's signature. For example, there is record evidence that bolsters Ifergane's claims that Holland harbored ill will towards her and had reason to prefer she not receive the insurance funds. In particular, it is undisputed that several years earlier, Holland sued Schreiner and Ifergane for money he claimed they owed him. (Pl.'s Resp. to Def. Holland's Stmt. of Facts at ¶ 83.) Further, there is no dispute that Holland gave Schreiner around $18,000—that Schreiner never repaid—shortly before his diagnosis. (*Id.* at ¶ 81.) Moreover, Holland himself says Schreiner told him, in early 2018, that Ifergane had inherited a lot of money, was now married to a wealthy husband, and therefore did not have any need for the insurance money. (Holland's Stmt. at ¶ 13.) Holland also maintains that Schreiner expressed his desire that the funds go to Fratellini who had provided friendship and financial support for many years. (*Id.*) In addition to these facts, a factfinder could also find Holland's long-term friendship with Fratellini prompted Holland to make Fratellini the beneficiary of the policy instead of Ifergane. Lastly, and further detracting from Holland's insistence that his testimony is wholly unimpeached, is a significant discrepancy between Fratellini and Holland's testimony about Schreiner's call to Fratellini regarding the beneficiary change. Holland recalls Schreiner's calling Fratellini, in Holland's presence, to tell Fratellini he was the newly named beneficiary of the policy on the day it was signed. (Fratellini Decl. ¶ 6, ECF No. 31-5, 3.) Fratellini, however, says he only learned of the change after Schreiner's death and that he has no recollection of Schreiner's telling him he was the beneficiary. (*Id.*)

Many of these facts alone, or even in small groups, would likely not be enough to squeak past summary judgment. But together with (1) Ifergane's testimony regarding Schreiner's statements to her about the policy four days before he died, (2) Holland's emphatic testimony that he witnessed the signature,

and (3) the handwriting expert's opinion that the signature was forged, they are. Viewed in the light most favorable to Ifergane, there is sufficient record evidence—albeit just barely—upon which a reasonable factfinder could conclude that Holland himself forged Schreiner's signature. *See, e.g., Jackson Natl. Life Ins. Co. v. Hutchinson*, 1:13-CV-01653-ELR, 2015 WL 11198934, at *9 (N.D. Ga. Aug. 18, 2015) ("From the testimony that [the decedent] became visibly upset when she learned about the beneficiary change, a jury might reasonably infer that she did not sign the [change] form.").

Of course, one might certainly argue that, even if Ifergane's testimony is believed, there are still any number of explanations for Schreiner's statement that would still allow Holland to ultimately prevail. For example, it's possible Schreiner's mental state was, by then, so diminished that he forgot about the change. Or, it's possible Schreiner did not genuinely believe Ifergane was still the beneficiary but, nonetheless, wanted Ifergane to believe she still was while she comforted him during his final days. Regardless of these possibilities, however, the record nonetheless reveals a genuine issue of material fact, preventing the Court from granting summary judgment on this claim.[3] *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) ("If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment.")

On the other hand, Ifergane has not set forth any evidence that Holland unduly influenced or otherwise tricked Schreiner into changing the beneficiary to Fratellini. Indeed, she has not introduced evidence of the exertion of *any* influence, much less undue influence. Even if the eleventh-hour beneficiary change was disappointing and shocking, or even suspicious, Ifergane has countered Holland's motion for summary judgment regarding undue influence with only speculation, hunches, and conclusory allegations. She also fails to cite a single legal authority in support of her position in this regard. And lastly, as with her undue influence allegations against Fratellini, Ifergane herself admits she is "not aware of any undue influence that Mr. Holland engaged in." (Ifergane Dep. at 112:19–23.) There is simply no record evidence whatsoever indicating a genuine issue of material fact with respect to Ifergane's undue influence claims and allegations based on trickery.

---

[3] At the same time, the Court recognizes what might appear to be a disconnect between Fratellini's succeeding on summary judgment while Holland faces trial. However, despite Ifergane's protestations to the contrary, she has failed to come forward with even a scintilla of evidence that Fratellini had any knowledge about the purported forgery or that he was in any way in cahoots with Holland. Indeed, Ifergane's case against Holland is moving forward despite the quality of her opposition briefing; certainly not because of it.

### B. Ifergane's declaratory judgment claim is unavailing.

Ifergane also purports to seek declaratory relief, explaining in her complaint that "[a] present dispute over the contract beneficiary exists" because "[t]he insurance company has paid the policy benefits [to] a third-party attorney" and not to her. (Am. Compl. at ¶¶ 22–23.) She asks the Court to declare "[t]he full amount of the benefits . . . to be lawfully and equitabl[y] paid to the plaintiff." (*Id.* at ¶ 22.) Her request for relief, however, is solely backward looking and therefore does not properly state a claim for declaratory relief.

Significantly, "a plaintiff seeking . . . declaratory relief must prove not only an injury, but also a real and immediate threat of *future injury* in order to satisfy the 'injury in fact' requirement." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation omitted) (emphasis added); *see also Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010), *aff'd,* 430 Fed. App'x 795 (11th Cir. 2011) (unpublished) ("The Declaratory Judgment Act is inappropriate to adjudicate past conduct.") That is "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to settle 'actual controversies' *before* they ripen into breaches of contract or violations of law." *Bacardi USA, Inc. v. Young's Mkt. Co.*, 273 F. Supp. 3d 1120, 1127 (S.D. Fla. 2016) (Seitz, J.) (emphasis added). "Past injuries alone generally do not establish declaratory judgment jurisdiction." *Id.* at 1128. Here, there is no dispute that Fratellini submitted a claim for the benefits and that the insurance company paid the benefits to him. (Fratellini Stmt. of Facts at ¶ 20; Fidelity Docs., ECF No. 30-1, 17–21.) To the extent Ifergane disputes the propriety of the disbursement, the payment "has already occurred, and a declaratory judgment should not issue over past conduct alone." *Bacardi*, 273 F. Supp. 3d at 1130. Because Ifergane "is not attempting to prospectively clarify [her] rights and obligations under the [policy] but rather to recover for past harm resulting from [the Defendants' actions]," her "declaratory judgment claim is an inappropriate vehicle for the relief [she] seeks." *Allegheny Cas. Co. v. Archer-W./Demaria Jt. Venture III*, 8:13-CV-128-SCB-TGW, 2014 WL 4162787, at *19 (M.D. Fla. Aug. 21, 2014). Ifergane is simply not entitled to declaratory relief in this case.

### 4. Conclusion

To summarize, Ifergane has failed to make a showing sufficient for a jury to reasonably find on her behalf with respect to her claims against Fratellini. The Court therefore **grants** Fratellini's motion for summary judgment in its entirety (**ECF Nos. 32**). Based on the entry of summary judgment in his favor, Fratellini is excused from further participation in this case, including calendar call and trial, as well as further briefing of any pending motions.

On the other hand, the record reveals a genuine issue of material fact regarding Ifergane's allegation that Holland forged Schreiner's signature. Accordingly, as set forth above in more detail, the Court **grants in part and denies in part** Holland's motion for summary judgment (**ECF No. 33**). Trial with respect to the remaining claim against Holland will proceed, consistent with this order, with calendar call on February 11, 2020, for the following two-week trial period commencing February 18.

**Done and ordered** at Miami, Florida, on January 16, 2019.

_____
Robert N. Scola, Jr.
United States District Judge